IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JENNIFER MAY,

      Plaintiff,

v.                                        No. 12-CV-676 MCA/KBM

BOARD OF COUNTY COMMISSIONERS
FOR CIBOLA COUNTY, CIBOLA COUNTY
SHERIFF JOHNNY VALDEZ, in his official
capacity, CIBOLA COUNTY SHERIFF'S
DETECTIVE WILLIAM MARION, in his
individual capacity, OFFICE and ASSISTANT
DISTRICT ATTORNEY KRISTINA
FAUGHT-HOLLAR, in her individual capacity,
JAMES REESE and OLIVER REESE,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants Thirteenth Judicial District Attorney's Office and Assistant District Attorney Kristina Faught-Hollar's Motion for Judgment on the Pleadings on Counts V and VI and Memorandum in Support* [Doc. 29]. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motions.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jennifer May brings this suit, under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, alleging that the Defendants conspired against her and caused her to be wrongfully arrested in Maryland. [Doc. 1-2] In order to place May's complaint in context,

1

some facts relating to the history between May and Defendant James Reese are necessary.[1]

May and Defendant James Reese were married and have three children together. [Doc. 1-2, ¶¶ 14, 15] May alleges that, during their marriage, James Reese abused her physically, emotionally and verbally. [Doc. 1-2, ¶ 16] They divorced in 2005 in Hawaii, and have been involved in a contentious dispute over child support since. [Doc. 1-2, ¶¶ 18-21] The Hawaii Court also entered an Order of Protection prohibiting James Reese "from possessing, controlling, or transferring ownership of any firearm, ammunition, firearm permit or license" until 2055. [Doc. 1-2, ¶ 17] At some point after their divorce, May moved to Columbia, Maryland and James Reese moved Milan, New Mexico. [See Doc. 1-2, ¶¶ 5, 11, 48]

In 2009, James Reese had a domestic dispute with his subsequent wife, Danielle Boucher-Reese. [Doc. 1-2, ¶¶ 47-48] Boucher-Reese then contacted May and learned about the Order of Protection prohibiting James Reese from possessing firearms and ammunition. [Doc. 1-2, ¶ 49] Ms. Boucher-Reese called New Mexico State Police, reported the domestic dispute, and reported that James Reese had guns in violation of the Protective Order. [Doc. 1-2, ¶¶ 48, 49] An officer responded to the Reese home and observed a gun, a gun bag and a gun safe in the residence. [Doc. 1-2, ¶¶ 47, 50] After obtaining a warrant, law enforcement officials seized at least sixty firearms from James Reese's house, automobile and place of business. [Doc. 1-2, ¶ 53] James Reese was arrested and he blamed May for his arrest. [Doc.

---

[1]Because the Court is addressing a motion to dismiss, the Court recites the facts alleged in Plaintiff's Complaint, taking them as true. Further, though Defendants have attached a document to their reply brief, the Court has only considered the well-pleaded facts of the complaint in deciding this motion.

1-2, ¶¶ 50, 52]

Two days after James Reese bonded out of custody, Defendants James Reese, Oliver Reese, and Detective William Marion of the Cibola County Sheriff's Office "fabricated" an incident narrative, which Detective Marion prepared, "baselessly alleging that Boucher-Reese was the perpetrator of the domestic violence incident and that she had embezzled more than $60,000.00 from James Reese and Oliver Reese." [Doc. 1-2, ¶¶ 54, 55] Defendant Faught-Hollar, an Assistant District Attorney for the State of New Mexico's Thirteenth Judicial District Attorney's Office, signed an arrest warrant for Ms. Boucher-Reese. [Doc. 1-2, ¶¶ 10, 56] However, about a month later, the charges against Ms. Boucher-Reese were dismissed for lack of evidence. [Doc. 1-2, ¶ 57] Around this same period of time, May "had contentious conversations with Defendant Faught-Hollar regarding the decision to drop all criminal charges against Defendant James Reese who had allegedly held [one of the children of May and James Reese] against her will." [Doc. 1-2, ¶ 39]

Against this background occurred the events of 2010, which directly give rise to May's Complaint. In March of 2010, May filed a motion for enforcement of child support arrears in the amount of $3,245.40. [Doc. 1-2, ¶ 22] According to May, the child support calculations were determined by the state of Hawaii, in a five-page, month-by-month transaction report with a summary on the fifth page. [Doc. 1-2, ¶¶ 22-24] The New Mexico District Court was provided a copy of the enforcement motion, which contained all five pages of the transaction report. [Doc. 1-2, ¶ 24] However, the copy of the enforcement motion served on James Reese, via certified mail by the State of New Mexico Child Support

Enforcement Division, was missing page four of the transaction report. [Doc. 1-2, ¶¶ 23, 24] According to May, the accounting summary on page five of the report contained an accurate total of the amounts of arrears, accounting for all payments on each page, and thus the missing fourth page had no effect on the accuracy of the total arrears as stated on the fifth page. [Doc. 1-2, ¶¶ 24] May alleges that, based on the missing fourth page, James Oliver made a report to Detective Marion that May was attempting to defraud him. [Doc. 1-2, ¶ 26, 27] Further, May alleges that Defendant Oliver Reese contacted law enforcement to report alleged fraud, was present when the report was made and that "allegations have previously been made that Oliver Reese paid money to Defendant Marion for improper purposes," including the "conjured-up" allegations against Ms. Boucher-Reese. [Doc. 1-2, ¶¶ 28-34] After meeting with James Reese, Detective Marion drafted an affidavit upon which an arrest warrant for May was issued. [Doc. 1-2, ¶ 27] Defendant Faught-Hollar signed the arrest warrant. [Doc. 1-2, ¶ 38] According to May, "Defendant Faught-Hollar advised Defendant Marion that probable cause existed for the arrest of Plaintiff and otherwise conferred with Defendant Marion for purposes of the affidavit in support of the application for an arrest warrant." [Doc. 1-2, ¶ 37] Based on the warrant, May was arrested in Maryland and held in custody from July 13, 2010 to July 22, 2010. [Doc. 1-2, ¶ 41] Eventually, the charges against May were dropped for lack of evidence. [Doc. 1-2, ¶ 42]

May now brings this complaint based on her arrest and seizure from July 13, 2010 to July 22, 2010. Of relevance to this motion are May's two claims under the New Mexico Tort Claims Act against Faught-Hollar and the Thirteenth Judicial District Attorneys' Office (and

4

others). [Doc. 1-2, ¶¶ 99-119] As to Faught-Hollar, in Count V May claims that she is a law enforcement officer under the New Mexico Tort Claims Act, and she "intentionally and/or negligently confined and/or restrained Plaintiff without her consent and with knowledge that [she] had no probable cause or other lawful authority to do so." [Doc. 1-2, ¶¶ 101, 102] May alleges that the "exculpatory facts available to the Defendants . . . would not warrant a reasonable officer to believe that their actions were appropriate." [Doc. 1-2, ¶ 103] May alleges that Faught-Hollar was primarily motivated by an illegitimate desire to retaliate against, harass, intimidate and harm May. [Doc. 1-2, ¶ 112] Finally, May alleges that Faught-Hollar "engaged in acts and omissions which resulted in the commission of the torts of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights, and/or deprivation of rights, privileges and immunities secured by the constitutions and laws of the United States and New Mexico." [Doc. 1-2, ¶ 108]  In Count VI, May alleges that Faught-Hollar conspired with Detective Marion, James Reese and Oliver Reese to "commit the wrongful acts, described above, giving rise to" her Tort Claim Act claims. [Doc. 1-2, ¶ 116]  May alleges that the State of New Mexico has waived immunity for her claims under Counts V and VI under N.M.S.A. 1978, §§ 41-4-6(A) and 41-4-12.

As to the Thirteenth Judicial District Attorney's Office, May alleges that it is "directly responsible to Plaintiff for the negligent and/or intentional acts and omissions" of Faught-Hollar under the doctrine of *respondeat superior*. [Doc. 1-2, ¶ 119]  May alleges that the District Attorney's Office had the duty "to act reasonably in order to avoid injuries and

deprivations of rights resulting from unsafe or dangerous conditions created by inadequate or improper polices and procedures." [Doc. 1-2, ¶ 109] May alleges that it also had a duty to "supervise its employees, contractors and agents in order to ensure that they did not act negligently, grossly negligently, or recklessly in the operation or maintenance of their respective offices." [Doc. 1-2, ¶ 110] Finally, May claims that the District Attorney's Office "failed to implement appropriate policies and procedures regarding employee training, oversight of employees, discipline of employees, applications for search warrants, and other such policies and procedures as are reasonably necessary to ensure that Plaintiff would not be subjected to the tortious conduct described herein." [Doc. 1-2, ¶ 113] May relies again on the waivers of immunity in Section 41-4-6 and 41-4-12 in asserting her claims against the District Attorney's Office.

## II. ANALYSIS

The Sixth Judicial District Attorney's Office and Faught-Hollar move for Judgment on the Pleadings on May's claims under the New Mexico Tort Claims Act, in Counts V and VI of May's Complaint. [Doc. 29]

### *Standard*

A defense motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Aspenwood Inv. Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004); *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992). Under

Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal citation omitted). While the Court "must assume that all factual allegations in the complaint are true (even if doubtful in fact), . . . the plaintiff must provide more than labels and conclusions or a formulaic recitation of the elements of a cause of action, and factual allegations must be enough to raise a right to relief above the speculative level." *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010) (internal quotation marks, citations and brackets omitted) (quoting *Twombly*, 550 U.S. at 555). If a plaintiff cannot nudge the claims "across the line from conceivable to plausible," the complaint must be dismissed. *Iqbal,* 556 U.S. at 680.

### *Waiver Under the New Mexico Tort Claims Act*

Defendants' motion for judgment on the pleadings rests on their legal argument that the New Mexico Tort Claims Act does not waive immunity for May's tort claims against them. The New Mexico "Tort Claims Act shields both governmental entities and public employees from liability for torts except when immunity is specifically waived in the Act. If a public employee, while acting in the scope of duty, commits a tort falling within one of

7

the waivers, the entity which employs him is liable." *Abalos v. Bernalillo Cnty. Dist. Attorney's Office*, 734 P.2d 794, 797 (N.M. App. 1987) (internal quotation marks and citations omitted).  May alleges that two provisions of the New Mexico Tort Claims Act specifically waive immunity for her claims: Section 41-4-12, which waives immunity for enumerated wrongful acts by law enforcement officers; and Section 41-4-6(A), which waives immunity for "bodily injury, wrongful death or property damage cause by the negligence of public employees . . . in the operation or maintenance of any building, public park, machinery, equipment or furnishings." [Doc. 1-2, ¶¶ 100, 116]

### **Waiver for Torts by Law Enforcement Officers**

May asserts that Assistant District Attorney Faught-Hollar was acting as a law enforcement officer at the time she signed the affidavit for the arrest warrant, and thus New Mexico has waived immunity under Section 41-4-12. [Doc. 39, p. 7].  For purposes of the waiver of immunity, a law enforcement officer is defined by the Tort Claims Act:

> "[L]aw enforcement officer" means a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

N.M.S.A. 1978, § 41-4-3(D).  The New Mexico Court of Appeals has held that a district attorney acting in his or her prosecutorial role is not a "law enforcement officer" as defined by Section 41-4-3(D).  *Coyazo v. New Mexico*, 897 P.2d 234, 237 (N.M.App. 1995).  However, the Court pointed out that there is no "universal rule of immunity in favor of

district attorneys," and that the court must measure the "day-to-day duties, responsibilities, and activities" of the district attorney against the traditional duties and activities of a law enforcement officer. *Id.* at 236-37. The statutory definition of a law enforcement officer "does not focus on the defendants' specific acts at the time of their alleged negligence. Instead it simply requires that the defendants' principal duties, those duties to which they devote a majority of their time, be of a law enforcement nature." *Weinstein v. City of Santa Fe, ex rel., Santa Fe Police Dep't*, 916 P.2d 1313, 1317 (N.M. 1996). Three New Mexico cases have considered, in various contexts, whether a district attorney or assistant district attorney was immune from liability under the Tort Claims Act, and their analysis is instructive in deciding the present motion.

The first case involved a suit for libel by a sheriff's office employee against an assistant district attorney and the district attorney. *Candelaria v. Robinson*, 606 P.2d 196, 199 (N.M.App. 1980). The assistant district attorney prepared a report about the employee's actions in a murder investigation, which the district attorney then quoted in a letter to the sheriff, recommending termination of the employee, and accusing the employee of "highly improper gestapo-type tactics." *Id.* The *Candelaria* Court reasoned that a district attorney has the statutory duties to prosecute criminal cases and to advise the sheriff whenever requested, as well as the duties incidental and necessary to the discharge of his statutory duties. *Id.* at 201-02. The Court thus concluded that both prosecutors were acting within those duties in investigating the sheriff's office employee and advising the sheriff that the employee be terminated. *Id.* However, the district attorney also held a press conference and

made statements about the employee. *Id.* at 199. Based on the lack of information in the record as to what those statements were, the Court determined it could not analyze whether immunity applied to the statements. *Id.* at 202-03.

The next case, *Abalos*, addressed whether a prosecutor is a "law enforcement officer" under Section 41-4-3(D). *Abalos,* 734 P.2d at 800-01. In *Abalos*, the plaintiff brought a claim against the district attorney and unnamed employees of the district attorney's office (among others) for improperly releasing a violent inmate after he had been indicted, who then injured the plaintiff after his improper release. *Id.* at 796. The plaintiff sued the district attorney and his employees who were "responsible for processing the paperwork so that the Detention Center personnel would be notified of the indictment and warrant" before the inmate would otherwise be released. *Id.* at 800-01. The plaintiff argued that the employees' principal duties were to "hold in custody any person accused of a criminal offense," as defined by Section 41-4-3(D). *Id.* at 801. However, based on the lack of evidence that the employees' principal duties were to hold in custody individuals who were accused of a crime, the district court granted summary judgment for the district attorney's office and the unnamed employees. *Id.* In upholding the summary judgment, the Court of Appeals stated:

> An action or inaction indirectly affecting the release of a prisoner does not rise to a principal duty to hold in custody under law. Plaintiff has not directed our attention to any provision in the law that requires the district attorney, his assistants or personnel to hold prisoners in custody. That is the statutory function of jails and detention centers.

*Id.* (internal quotation marks, alterations and citation omitted).

Finally, in *Coyazo*, the plaintiff sued the district attorney (and others) based on

10

allegations that the district attorney had incorrectly characterized him as a habitual offender, causing him to be incarcerated seventeen months longer than he would have been had his sentence been correctly calculated. *Coyazo*, 897 P.2d at 235. The plaintiff alleged that the district attorney was a law enforcement officer, arguing that the district attorney's principal duty was to "maintain public order," as set forth in the definition of law enforcement officer under Section 41-4-3(D). *Id.* at 236. The Court disagreed. The Court looked at the day-to-day activities of the prosecutor, including "determining whether and which charges, if any, to file against individuals, prosecuting the charges through the courts, and upon receiving a conviction, ensuring that appropriate sentences are imposed." *Id.* at 236 (citing N.M.S.A. 1978, § 36-1-18). By comparison, a law enforcement officer's duties are typically those of an officer on patrol and "dealing with criminal suspects, arrestees, and convicted criminals in custody." *Id.* at 237 (collecting cases). Accordingly, the Court rejected the plaintiff's argument that the district attorney was a law enforcement officer, holding that "it is clear that district attorneys and their staffs are not engaged in the same activities as the officer on patrol when involved in the judicial phase of the criminal process." *Id.* at 238.

  Considering these authorities together and being guided by them, the Court rejects May's argument that Assistant District Attorney Faught-Hollar falls under Section 41-4-3(D)'s definition of a law enforcement officer. May's complaint makes no allegations about Faught-Hollar's primary duties, and instead focuses on her acts in relation to this case. [*See* Doc. 1-2, ¶¶ 36-38] However, construing the complaint in May's favor, the Court will imply that Faught-Hollar's primary duties include those she alleges: signing search warrants and

11

submitting them to the Court to be issued, and advising officers concerning whether probable cause to bring charges exists.

May argues that, by advising Detective Marion concerning probable cause and by signing the arrest warrant, Faught-Hollar was "mak[ing] arrests for crimes" as defined by Section 41-4-3(D). The Court cannot agree. *Candelaria* pointed to Section 36-1-18, which requires the district attorney to "advise all county and state officers whenever requested," as indicating that a district attorney doing so was immune from suit. *Candelaria*, 606 P.2d at 202; Section 36-1-18(A)(3). Faught-Hollar's act of advising officers, including Detective Marion, concerning probable cause, is consistent with her statutory and lawyerly duty of a district attorney, and is only indirectly related to making arrest. Thus, though she advises law enforcement officers as to whether probable cause exists to make an arrest, this day-to-day activity does not bring Faught-Hollar within the definition of a law enforcement officer. *Id.* Further, to the extent Faught-Hollar's day-to-day duties include signing warrant applications, again this duty is one by which she "prosecute[s] . . . for the state in all courts of record of the counties of his district all cases, criminal and civil, in which the state or any county . . . may be a party or may be interested." Section 36-1-18(A)(1); *see also Coyazo*, 897 P.2d at 236 ("Prosecution of criminal cases includes determining whether and which charges, if any, to file against individuals [and] prosecuting the charges through the courts."). While her duties may be indirectly necessary to effect an arrest, she is not the one making the arrest. *See Abalos*, 734 P.2d at 801 ("An action or inaction indirectly affecting the release of a prisoner does not rise to a 'principal dut[y] * * * to hold in custody' under law." (citation

12

omitted)).

    May makes one last argument under Section 41-4-12: the New Mexico Constitution states that the district attorney "shall be learned in the law, and . . . shall be the *law officer* of the state and of the counties within his district[.]" N.M. Const. Art. VI, § 24 (emphasis added). However, Plaintiff's argument ignores the difference between a "law officer," learned in the law, and a "law enforcement officer" as specifically defined by Section 41-4-3(D). Nothing about the Constitution's definition of a district attorney suggests that the New Mexico State Legislature, in defining a law enforcement officer for purposes of the Tort Claims Act, intended to include a district attorney within that definition. Further, *Candelaria* considered the same Constitutional language cited by May in deciding whether the state of New Mexico waived immunity for the district attorney's allegedly libelous acts. *Candelaria*, 606 P.2d at 202. *Candelaria* determined that a "law officer" is a "public official employed to administer or advise in legal matters[;]" and has the "implied duty to act as an advocate of the State's interest in the protection of society." *Id.* (internal quotation marks and citations omitted). As these duties are markedly different from the duties of a patrol officer or the duties of holding individuals in custody, maintaining public order and making arrests, as discussed in Section 41-4-3(D), the Court must reject May's argument. Thus, the Court cannot conclude that Faught-Hollar falls within the definition of a law enforcement officer for purposes of the New Mexico Tort Claims Act. The State of New Mexico did not waive the immunity of Faught-Hollar or the Thirteenth Judicial District Attorney's office in Section 41-4-12.

### **Waiver for the Negligent Operation or Maintenance of a Building**

May further asserts that New Mexico waived liability for her claims against Faught-Hollar and the District Attorney's Office through Section 41-4-6, which states:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings.

Section 41-4-6(A). The New Mexico Supreme Court recently stated that "the waiver of liability in Section 41–4–6(A) incorporates the concepts of premises liability found in our case law." *Encinias v. Whitener Law Firm, P.A.,* No. 33,874 2013 WL 4857700, *3 (N.M. September 12, 2013).

Plaintiff relies on *Upton v. Clovis Municipal School District*, 141 P.3d 1259, 1261 (N.M. 2006), which states: "The waiver applies to more than the operation or maintenance of the physical aspects of the building, and includes safety policies necessary to protect the people who use the building." Accordingly, Plaintiff argues:

> The lack of adequate policies and procedures implemented on behalf of the Thirteenth Judicial District Attorney's Office concerning employee training, oversight of employees, discipline of employees, applications for search warrants, and other policies created a risk to the general public of assault, battery, false imprisonment, false arrest and other torts.

[Doc. 39, p. 9] May argues that the State of New Mexico's waiver for the negligent maintenance of a building has been interpreted so broadly as to encompass her claims for her wrongful arrest. [Id.]

May's argument is not persuasive. First and foremost, there is no allegation that May ever used the building or premises housing the Thirteenth Judicial District Attorney's Office, or that the lack of a specific safety policy caused her to be injured on such property or by a condition of the property. Instead, May alleges that the District Attorney's Office and Cibola County acted "negligently, grossly negligently, or recklessly in the operation or maintenance of their respective offices[,]" and particularly with regard to "training, oversight of employees, discipline of employees, applications for search warrants and other such policies and procedures[.]" [Doc. 1-2, ¶¶ 110, 113] Here, May's allegations are that the District Attorney's Office failed to properly train and supervise its district attorneys with regard to the standard for signing an application for a search warrant, causing her to be arrested in *Maryland*. May's claim is not based on the injury of May (or her safety) on any property owned or maintained by the Thirteenth Judicial District Attorney's Office or the County of Cibola in *New Mexico*, and is thus not covered by Section 41-4-6(A). *See Upton* 141 P.3d at 1263 ("Section 41-4-6 waives immunity for the operation or maintenance of a public building, which may include proof of negligent acts of employee supervision that is a part of the operation of the building. But the claim cannot be based solely on negligent supervision." (Internal citations omitted.)). Accordingly, the Court concludes that New Mexico has not waived immunity through Section 41-4-6, for the acts of Defendants Faught-Hollar and the Thirteenth Judicial District Attorney's Office, and Counts V and VI of the Complaint against these Defendants must be dismissed.

**CONCLUSION**

The State of New Mexico has not waived immunity for the claims May brings against Faught-Hollar and the Thirteenth Judicial District Attorney's Office under the New Mexico Tort Claims Act. For the foregoing reasons, *Defendants Thirteenth Judicial District Attorney's Office and Assistant District Attorney Kristina Faught-Hollar's Motion for Judgment on the Pleadings on Counts V and VI and Memorandum in Support* [Doc. 29] is hereby **GRANTED.**

**IT IS THEREFORE HEREBY ORDERED that** Counts V and VI of Plaintiff's Complaint against Defendants Faught-Hollar and the Thirteenth Judicial District Attorney's Office be and hereby are **DISMISSED.**

**SO ORDERED** this 23rd day of September, 2013.

_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court