IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JENNIFER MAY,

      **Plaintiff,**

v.                                   **No. 12-CV-00676 MCA/KBM**

BOARD OF COMMISSIONERS FOR
CIBOLA COUNTY, CIBOLA COUNTY
SHERIFF JOHNNY VALDEZ, in his
official capacity, CIBOLA COUNTY
SHERIFF'S DETECTIVE WILLIAM
MARION in his individual capacity,
THE THIRTEENTH JUDICIAL DISTRICT
ATTORNEY'S OFFICE and ASSISTANT
DISTRICT ATTORNEY KRISTINA
FAUGHT-HOLLAR, in her individual
Capacity, JAMES REESE AND OLIVER
REESE,

      **Defendants.**

### MEMORANDUM OPINION AND ORDER

    **THIS MATTER** is before the Court on *Defendant Assistant District Attorney Kristina Faught-Hollar's Motion for Summary Judgment Based Upon Prosecutorial Immunity and Memorandum in Support* [Doc. 59] and *Defendants Thirteenth Judicial District Attorney's Office and A.D.A. Kristina Faught-Hollar's Motion for a Stay of Proceedings and Memorandum in Support.*[1] [Doc. 61] Having considered the parties submissions, the relevant law, and being fully advised in the premises, the Court grants

---

[1] After Ms. Faught-Hollar and the Thirteenth Judicial District Attorney's office filed this motion, this Court dismissed all claims brought by Plaintiff against the Thirteenth Judicial District Attorney's Office. [Doc. 72] Thus, only Ms. Faught-Hollar's request for stay is before the Court.

in-part and holds in abeyance in-part Ms. Faught-Hollar's *Motion for Summary Judgment* [Doc. 59] and grants in-part and denies in-part Ms. Faught-Hollar's *Motion for Stay* [Doc. 61].

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was arrested in Maryland on July 13, 2010, and held until July 22, 2010. [Doc. 1-2, ¶ 41]  She alleges that she was wrongfully arrested and that her ex-husband, James Reese, conspired with his father, Oliver Reese, as well as Cibola County Detective William Marion and Thirteenth Judicial District Assistant District Attorney Kristina Faught-Hollar to cause Plaintiff to be wrongfully arrested.  [*See* Doc. 1-2, ¶¶ 82-90] Plaintiff was arrested for what Detective Marion described as "a fraudulent scheme to extort money from James Reese that was not in fact due" based on James Reese's receipt of documents from the State of New Mexico pursuant to a child support collection action where a page of the child support ledger prepared by the State of Hawaii, which purportedly showed payments, was missing.[2]  [Doc. 59-1, pp. 5-6]  Ms. Faught-Hollar now seeks summary judgment on Plaintiff's claims against her for violation of 42 U.S.C. § 1983 based on unreasonable seizure, malicious prosecution, and conspiracy under the doctrine of absolute prosecutorial immunity.  [Doc. 1-2, ¶¶ 63-90; Doc. 59]

Plaintiff filed this action on April 17, 2012.  [Doc. 1-2, p. 1]  Plaintiff brought five causes of action against Ms. Faught-Hollar.  [Doc. 1-2, ¶¶ 62-119] However, only three causes of action against Ms. Faught-Hollar remain, all alleging violation of 42 U.S.C. §

---

[2] The allegations in this case are set out more fully in the Court's *Memorandum Opinion and Order* filed September 23, 2013.  [Doc. 72]  The Court sets forth additional information from the allegations as necessary for the analysis, below.

1983:  Count I, unconstitutional seizure; Count II, malicious prosecution; and Count III, conspiracy to violate Plaintiff's civil rights.  [Doc. 1-2, ¶¶ 62-90; Doc. 72]  No discovery has occurred yet in this case.  On January 14, 2013, all parties waived the Initial Scheduling Conference.  [Docs. 41, 42]  The Court did not adopt the parties' Proposed Discovery Plan [Doc. 43] or enter a Scheduling Order, and no discovery has occurred. Even so, Ms. Faught-Hollar has moved for a stay of litigation pending the resolution of her *Motion for Summary Judgment*.  [Doc. 61]

Ms. Faught-Hollar moves for summary judgment[3] on the claims remaining against her on the ground of prosecutorial absolute immunity as recognized in *Imbler v. Pachtman*, 424 U.S. 409 (1976).  Where a prosecutor acts in her "role as advocate for the State, rather than [her] role as administrator or investigative officer," she is entitled to absolute immunity.  *Burns v. Reed*, 500 U.S. 478, 491 (1991) (internal quotation marks and citation omitted).  Thus, a prosecutor is entitled to absolute immunity for her "decision to initiate a prosecution," *Imbler*, 424 U.S. at 421, but is only entitled to qualified immunity for giving legal advice to the police, *Burns*, 500 U.S. at 495, or giving sworn testimony in a "Certification for Determination of Probable Cause" used to support an arrest warrant.  *Kalina v. Fletcher*, 522 U.S. 118, 121, 130-31 (1997).

Ms. Faught-Hollar argues that she is entitled to prosecutorial immunity in this case, claiming that there is no evidence that she did anything more than initiate criminal charges against Plaintiff.  [Doc. 59, p. 9]  In her *Motion for Summary Judgment*, Ms.

---

[3] Ms. Faught-Hollar did not move to dismiss these claims against her under Federal Rule of Civil Procedure 12.

Faught-Hollar sets out her statement of undisputed material facts, largely relying on her affidavit.  [Doc. 59, pp. 2-5; Doc. 59-1, pp. 1-4]  Ms. Faught-Hollar avers that she is not acquainted with James Reese or Jennifer May.  [Doc. 59-1, ¶¶ 7-8]  She then states:

> 10.  On or prior to July 8, 2010, I read the Affidavit for Arrest Warrant prepared by Detective William Marion of the Cibola County Sheriff's Office (Exhibit 1).  I reviewed the attachments referenced in his affidavit to verify that they were in support of the facts alleged in the affidavit.
>
> 11.  Based upon the policy and practice of the Thirteenth Judicial District Attorney's Office, I reviewed the affidavit to determine whether all elements of the crimes alleged were stated by the facts in the affidavit, based only upon the four corners of this document, which includes any attachments that the law enforcement officer may be relying on.
>
> 12.  In this case, I determined that the omission of page 4 and the apparent alteration of page 5 of the February 22, 2010 State of Hawaii Child Support Enforcement Financial Details Statement (Attachment B), compared with the June 30, 2010 Financial Details Statement, coupled with the receipts documenting payments in the amount of $4000.00 paid in 2009 provided evidence of an attempted fraudulent collection of back child support.
>
> 13.  Therefore, I signed the Affidavit for Arrest Warrant, approving it as to form only, to signify that I had reviewed it and was of the opinion that the facts stated were sufficient to support the alleged violations of NMSA, 1978, 30-28-1, Attempt to Commit the Felony of Fraud under 30-16-6(E), attempting to fraudulently take property over $2,500, and of Stalking or Harassment, fraudulently claiming back child support with the intention of causing the arrest or restraint of James Reese and the denial of James Reese's passport and 2007 tax refund, when the Financial Details statement form from the State of Hawaii, dated June 30, 2010, showed that the alleged $3,645.40 had been paid by James Reese.
>
> 14.  I did not advise or participate in the June 2010 investigation by the Cibola County Sheriff's Department in any manner.  I did not discuss the affidavit with Detective Marion, except to hand back the Affidavit and Criminal Complaint after I had signed them, approving them as to form only.
>
> 15.  I did not investigate the facts outside of reviewing the four corners of the affidavit.
>
> 16.  I did not advise the Cibola County Sheriffs' department about arresting Jennifer May, and I was unaware of the process or fact of her arrest until I received information from the Complaint in this matter.
>
> 17.  I signed the Criminal Complaint in M-61-FR-2010-00171 as to form only.  I was not the complaining witness in the case.  See Exhibit 2 hereto.

18.  Other than signing the 2 documents as described above, and attached here, I had no involvement in the criminal case or arrest of Plaintiff Jennifer May.

[Doc. 59-1, pp. 2-3]

Plaintiff opposes Ms. Faught-Hollar's *Motion for Summary Judgment*.  [Doc. 65] Plaintiff fails to include a numbered list refuting or admitting Ms. Faught-Hollar's statement of material facts, in conformity with Local Civil Rule D.N.M.LR-Civ. 56-1(b). [Doc. 65]  Instead, Plaintiff requests additional discovery and submits a Rule 56(d) affidavit by Plaintiff's counsel listing the discovery requested and the reasons for each request.  [Doc. 65-2]  Plaintiff requests broad reaching discovery as to most of the allegations of the Complaint.  [Doc. 65-2, pp. 1-8]  First, Plaintiff requests to depose Mr. Marion on the following subjects:  "the circumstances and facts around why he pursued the avenue he did, despite the fact that through relatively simple further investigation he would have discovered that the missing page was both completely irrelevant as to the amount of arrears owed" and that the total owed shown on the last page of the February, 2010 Financial Details sheet was correct; the reason the Reeses reported the alleged crime; and the circumstances surrounding the arrest warrant issued for Ms. Boucher-Reese and Mr. Marion's involvement.  [Doc. 65-2, pp. 2-4]  Plaintiff also seeks a "[r]equest for production from Defendant Marion of any documents, notes, recordings—audio or video, and any other documentation of involvement in this matter" to "discover what further steps Defendant Faught-Hollar could have taken in response to the red flags regarding probable cause found in Defendant Marion's affidavits and supporting documents."  [Doc. 65-2, pp. 2-3] Second, Plaintiff requests to depose James and Oliver

Reese regarding why they reported and pressed charges against May for alleged criminal activity and the circumstances surrounding the issuance of an arrest warrant for Ms. Boucher-Reese.  [Doc. 65-2, pp. 3-4]  Third, Plaintiff seeks to depose Ms. Faught-Hollar. She asks to depose Ms. Faught-Hollar regarding "her previous interactions with Defendants James Reese, Oliver Reese and William Marion[,]" in part because Ms. Faught-Hollar did not aver that she does not know Oliver Reese.  [Doc. 65-2, p. 5, ¶ 4] Plaintiff further seeks to depose Ms. Faught-Hollar on the reason that she "affixed her signature" to the arrest affidavit despite "obvious discrepancies" which "raise concerns … as to the existence of probable cause[;]" and, "exactly what she did or did not review, with whom she spoke regarding the affidavit, and when."  [Doc. 65-2, pp. 5-8]  Plaintiff seeks to question Ms. Faught-Hollar regarding statements made in her affidavit that she "did not discuss the affidavit with Detective Marion, *except* to hand back the Affidavit[,]" and "what else she may have discussed with Detective Marion at the time regarding the affidavit or related issues."  [Doc. 65-2, p. 7]  Most of the discovery Plaintiff seeks from Ms. Faught-Hollar, however, is tailored to determine "how she concluded that a missing page in documentation sent through the court system could realistically indicate probable cause to reasonably believe that Jennifer May committed the crimes of fraud and harassment."  [Doc. 65-2, p. 8]

Ms. Faught-Hollar opposes Plaintiff's request for additional discovery.  [Doc. 66, pp. 2-3, 10]  She submits that Plaintiff's counsel violated Rule 11 by making "wildly speculative and conclusory" allegations in the Complaint that Ms. Faught-Hollar was involved in a conspiracy to have either Plaintiff or Ms. Boucher-Reese arrested.  [Doc.

66, pp. 3-4]  She argues that her act of signing the criminal complaint and the affidavit for arrest warrant as to form were within her role as an advocate of the state and thus she is entitled to absolute immunity and should not be subjected to any discovery.  [Doc. 66, pp. 7-9] Finally, she responds to Plaintiff's argument that she did not disavow a prior acquaintance with Oliver Reese by providing an affidavit stating that she is not personally acquainted with Oliver Reese.  [Doc. 69-1, ¶ 5]

II.    **STANDARDS OF LAW**

A.  *SUMMARY JUDGMENT AND DISCOVERY*

Federal Rule of Civil Procedure 56 allows summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-52 (1986).  An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  *See id.*at 248.  Judgment is appropriate as a matter of law if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

It is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts

against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. *See Hunt v. Cromartie*, 526 U.S. 541, 551-52 (1999). Even so,

> discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion. Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long *as the plaintiff has had a full opportunity to conduct discovery*.

*Anderson*, 477 U.S. at 256-57 (internal quotation marks, citation and brackets omitted; emphasis added). In a case where affidavits were basis of summary judgment but the non-movant did not have the opportunity to cross-examine at least one affiant, the Supreme Court reversed, stating: "It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of even handed justice." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 491 (1962) (internal quotation marks omitted)); *see also Anderson*, 477 U.S. at 255 (stating that the Court's holding "does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). Likewise, our Tenth Circuit has overturned a district court's grant of summary judgment based solely on defense affidavits where the plaintiffs requested but were not afforded the opportunity to present controverting material, concluding that the district

8

court "violated both the spirit and the mandates of the applicable rules." *Adams v. Campbell County School District*, 483 F.2d 1351, 1353 (10th Cir. 1973).

Federal Rule of Civil Procedure 56(d) (formerly codified at 56(f)) states:

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
      (1) defer considering the motion or deny it;
      (2) allow time to obtain affidavits or declarations or to take discovery; or
      (3) issue any other appropriate order.

A party seeking to defer a ruling on summary judgment under Rule 56(d) must file an affidavit that "explain[s] why facts precluding summary judgment cannot be presented.  This includes identifying the probable facts not available and what steps have been taken to obtain these facts." *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006) (internal quotation marks and citation omitted).  Although a summary judgment movant's exclusive control over information is a factor in the analysis, "[e]xclusive control does not . . . require automatic relief under Rule 56(f)." *Id.*  The discovery sought must "meet the issue on which the moving party contends there is no genuine factual issue." *Jones*, 854 F.2d at 1211.  Moreover, though affidavits submitted under Rule 56(d) are generally entitled to liberal treatment, where immunity is asserted the Court's discretion is limited to allowing, when necessary, discovery as to the facts bearing on the question of immunity. *Id.; see also Crawford-El v. Britton,* 523 U.S. 574, 547 (1998) ("[T]he trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense.").

An immunity defense is both "a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation[,]" such as discovery. *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal quotation marks and citation omitted). Where "the district court is unable to rule on the immunity defense without further clarification of the facts[,]" the Court may allow discovery which is "narrowly tailored to uncover only those facts needed to rule on the immunity claim[.]" *Maxey v. Fulton*, 890 F.2d 279, 282-83 (10th Cir. 1989) (internal quotation marks and citation omitted). "[U]ntil the threshold immunity question is determined, discovery shall be limited to resolving that issue alone." *Lewis v. City of Ft. Collins,* 903 F.2d 752 (10th Cir. 1990). A party seeking discovery under Rule 56(d) must show a "connection between the information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion." *Id.*

Recognizing the tension between the potential need for a non-moving party for discovery to overcome a motion for summary judgment based on immunity and the moving party's interest in avoiding unnecessary and burdensome discovery, the Supreme Court expounded on various tools available to trial courts to tailor discovery to just the facts bearing on the issue of immunity. *Crawford-El*, 523 U.S. at 597-600. The Court pointed out that the trial court "may limit the time, place, and manner of discovery, or even bar discovery altogether on certain subjects, as required to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. And the court may also set the timing and sequence of discovery." *Id.* at 599 (internal quotation marks and citations omitted). Thus, a trial court has "broad discretion in the management of the

factfinding process" which can be used to "manage the discovery process to facilitate prompt and efficient resolution of the lawsuit." *Id.* at 599-600.

### B.   IMMUNITY DEFENSES

Here, the question of whether Ms. Faught-Hollar is entitled to absolute immunity from suit under § 1983 turns on whether she was performing the function of an advocate of the state. *See Kalina*, 522 U.S. at 126. The Supreme Court determined that Congress did not intend to abrogate traditional "immunities well grounded in history and reason," including the absolute immunity from suit for prosecutors performing functions "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 418, 430 (internal quotation marks and citation omitted). "[T]he absolute immunity that protects the prosecutor's role as an advocate is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." *Kalina*, 522 U.S. at 127.

> To be sure, this immunity does leave the genuinely wronged [plaintiff] without civil redress against a prosecutor whose malicious or dishonest action deprives him [or her] of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. . . . As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

*Imbler*, 424 U.S. at 427-28 (internal quotation marks, citations and footnote omitted).

Thus, prosecutors are absolutely immune from damages for "making false or defamatory statements in judicial proceedings . . . and also for eliciting false and defamatory testimony from witnesses." *Burns*, 500 U.S. at 490-91. Moreover, where a prosecutor signs a charging document without swearing to the facts therein, the prosecutor is initiating a case and is entitled to absolute immunity. *Kalina*, 522 U.S. at 129. However, a prosecutor is not entitled to absolute immunity when he or she is acting as an administrator or investigator. *Burns*, 500 U.S. at 491. When a prosecutor is not acting in his or her role as an advocate of the state, he or she is entitled to qualified, rather than absolute immunity. *Id.* at 486-87. ""[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.* at 486.

In *Burns*, the United States Supreme Court held that a prosecutor is not entitled to absolute immunity when he or she gives legal advice to police officers in the investigative phase of a criminal case. *Burns*, 500 U.S. at 496. The prosecutor in *Burns* advised the police that it was an acceptable investigative technique to hypnotize a suspect who the police believed had multiple personalities, in order to obtain a confession. *Id.* at 482. The prosecutor then advised the police that they "probably had probable cause" to arrest the suspect based on statements she gave while under hypnosis. *Id.* (internal quotation marks omitted). The Court determined that the prosecutor may be entitled to qualified immunity for giving legal advice to the police, but was not entitled to absolute immunity for performing this function. *Id.* at 496. The Court pointed out that legal advice during the investigative phase is not so "intimately associated with the judicial

phase of the criminal process" so as to trigger absolute immunity. *Id.* Moreover, the

Court reasoned:

> [I]t is incongruous to allow prosecutors to be absolutely immune from
> liability for giving advice to the police, but to allow police officers only
> qualified immunity for following the advice. Ironically, it would mean that
> the police, who do not ordinarily hold law degrees, would be required to
> know the clearly established law, but prosecutors would not.

*Id.* at 495 (internal citation omitted). Further, the Court rejected the argument that

"giving legal advice is related to a prosecutor's roles in screening cases for prosecution

and in safeguarding the fairness of the criminal judicial process." *Id.* at 495. The Court

stated:

> [a]lmost any action by a prosecutor, including his or her direct participation
> in purely investigative activity could be said to be in some way related to
> the ultimate decision whether to prosecute, but we have never indicated that
> absolute immunity is that expansive. Rather, as in *Imbler*, we inquire
> whether the prosecutor's actions are closely associated with the judicial
> process.

*Id.* "Absent a tradition of immunity comparable to the common-law immunity from

malicious prosecution, which formed the basis for the decision in *Imbler*, we have not

been inclined to extend immunity from liability under § 1983." *Burns*, 500 U.S. at 493.

The issue in this case, therefore, is whether Ms. Faught-Hollar was acting in her role as

advocate of the state, or whether she was acting in another role for which immunity has

not been recognized.

## III.   UNDERLINE_ANALYSIS

   The affidavit for arrest warrant and the criminal complaint felony which Ms.

Faught-Hollar signed were for the purpose of initiating a criminal proceeding, and are

thus squarely within the prosecutor's role as an advocate.  Ms. Faught-Hollar did not personally attest to the facts in the "Criminal Complaint Felony" or the "Affidavit for Arrest Warrant", [Doc. 59-1, pp. 5-8] and is, therefore, entitled to absolute immunity with regard to her act of signing these documents as to form only.  *Kalina*, 522 U.S. at 129. Nor does her decision not to investigate the facts alleged in the criminal complaint cause her to lose absolute prosecutorial immunity—indeed, investigation could have opened Ms. Faught-Hollar up to qualified immunity.  *See Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993) (holding that a prosecutor is not entitled to absolute immunity when she "performs the investigative functions normally performed by a detective or police officer").  Thus, even if the documents fail to establish probable cause, as Plaintiff argues and requests discovery regarding, such inquiry is irrelevant to the question of whether Ms. Faught-Hollar is entitled to absolute immunity.  [Doc. 65, p. 17; Doc. 65-2, ¶¶ 5, 6(b)]  *See Kalina*, 522 U.S. at 128-29 (pointing out that a prosecutor's act in seeking an indictment is entitled to absolute immunity).  Accordingly. Ms. Faught-Hollar's *Motion for Summary Judgment* is granted with respect to Count II, Malicious Prosecution.

However, Plaintiff alleges that Ms. Faught-Hollar advised Mr. Marion with regard to his investigation and that probable cause existed to arrest Plaintiff.  [Doc. 1-2, ¶¶ 36, 37]  In *Burns*, the Supreme Court held that the act of giving legal advice to the police, including advice as to whether the police had probable cause to arrest the suspect, is entitled to qualified, not absolute, immunity.  *Burns*, 500 U.S. at 482, 495.  Here, it would be "incongruous" to conclude that Ms. Faught-Hollar, with a law degree, is entitled to

absolute immunity for giving legal advice but Mr. Marion is not entitled to absolute immunity for relying on her advice.  *Id.*

Ms. Faught-Hollar nonetheless seeks summary judgment by submitting an affidavit averring: "I did not advise or participate in the June 2010 investigation by the Cibola County Sheriff's Department in any manner.  I did not discuss the affidavit with Detective Marion, except to hand back the Affidavit and Criminal Complaint after I had signed them, approving them as to form only."  [Doc. 59-1, ¶ 14]  Further, she states:  "I did not advise the Cibola County Sheriffs' department about arresting Jennifer May…[,]" and "[o]ther than signing the 2 documents as described above, and attached here, I had no involvement in the criminal case or arrest of Plaintiff Jennifer May."  [Doc. 59-1, ¶¶ 16, 18]  The Court cannot rely on Ms. Faught-Hollar's affidavit as a basis for summary judgment without allowing Plaintiff an opportunity for discovery on the same issues.  To grant Ms. Faught-Hollar summary judgment, the Court would have to rely on her statement in her affidavit that she "did not advise the Cibola County Sheriffs' department about arresting Jennifer May."  [Doc. 59-1, p. 3, ¶ 16]  It would be contrary to Rule 56 to do so without allowing Plaintiff the opportunity to conduct discovery on this narrow issue.  *See Poller*, 368 U.S. at 473; *Adams*, 483 F.2d at 1353.

Thus, the Court must hold in abeyance Ms. Faught-Hollar's *Motion for Summary Judgment* on Count I, "42 U.S.C. § 1983 – Fourth & Fourteenth Amendment (Unreasonable Seizure)" and Count III, "42 U.S.C. § 1983 -- Conspiracy to Violate Civil Rights" until Plaintiff has had the opportunity to conduct limited discovery on the issue of Ms. Faught-Hollar's immunity.  [Doc. 1-2, pp. 16, 19; Doc. 59]  As set forth in

15

*Crawford-El*, the Court will permit limited discovery on this narrow point:   only as to the question of whether "Defendant Marion obtained the advice of Defendant Assistant District Attorney Kristina Faught-Hollar . . . with respect to his purported June 2010 investigation into Plaintiff" and whether "Defendant Faught-Hollar advised Defendant Marion that probable cause existed for the arrest of Plaintiff and otherwise conferred with Defendant Marion for purposes of the affidavit in support of the application for an arrest warrant."  [Doc. 1-2, ¶¶ 36, 37] *Crawford-El*, 523 U.S. at 599.  All such discovery must be narrowly tailored to establish the actions Ms. Faught-Hollar took with regard to the arrest of Plaintiff.  Plaintiff will be allowed to take a limited deposition of Ms. Faught-Hollar as to the statements Ms. Faught-Hollar made in her affidavit and as to her actions regarding the arrest of Plaintiff, including whether she advised Mr. Marion regarding whether there was probable cause to arrest Plaintiff.  The Court will also allow a limited and narrow deposition of Mr. Marion only as to whether Ms. Faught-Hollar advised him as to whether there was probable cause to arrest Plaintiff, and one request for production from Mr. Marion, limited only to any documents indicating whether Ms. Faught-Hollar communicated with him or advised him as to probable cause or during the investigative stage of this case.  No other discovery will be allowed, including but not limited to discovery relating to the alleged 2009 arrest of Ms. Boucher-Reese and depositions of James or Oliver Reese.  The Court denies all other requests for discovery set forth by Plaintiff in her Rule 56(d) affidavit.

One final matter bears discussion.  In her reply brief, Ms. Faught-Hollar refers to Federal Rule of Civil Procedure 11, and states that Plaintiff's paragraph 36, which alleges

that Ms. Faught-Hollar advised Mr. Marion as to probable cause, was not pleaded on information and belief.   [Doc. 66, p. 3]   Ms. Faught-Hollar does not, however, request Rule 11 sanctions.   If she did, such request would be denied for not being made by separate motion.   Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).").   Moreover, under the circumstances of this case the Court may be better able to evaluate any motion for sanctions under Rule 11 after limited discovery.

## IV.   <u>CONCLUSION</u>

**IT IS THEREFORE HEREBY ORDERED that:**

1)      Defendant Faught-Hollar's Motion for Summary Judgment on Count I and Count III is hereby **HELD IN ABEYANCE**;

2)      Defendant Faught-Hollar's Motion for Summary Judgment on Count II is hereby **GRANTED**;

3)      Defendant Faught-Hollar's Motion for a Stay of Proceedings is hereby **GRANTED IN-PART AND DENIED IN-PART**;

4)      Plaintiff's request for addition discovery under Federal Rule of Civil Procedure 56(d) is **GRANTED IN-PART** in accordance with this opinion;

5)      Plaintiff shall conduct all discovery allowed by this Memorandum Opinion and Order and file an Amended Response to Ms. Faught-Hollar's Motion for Summary Judgment **within sixty (60) days** of the date of this Order;

17

6)        All discovery other than that specifically authorized by this

Memorandum Opinion and Order is **STAYED.**

**IT IS SO ORDERED** this 31st day of March, 2014.


_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court